IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 16, 2002

## STATE OF TENNESSEE v. KIM HICKERSON

**Direct Appeal from the Circuit Court for Coffee County**
**No. 28,367     John W. Rollins, Judge**

---

### No. M2001-02072-CCA-R3-CD - Filed October 23, 2002

---

On December 15, 1997, a Coffee County jury convicted Appellant Kim Hickerson of selling less than 0.5 grams of cocaine, a class C felony. After a sentencing hearing on January 23, 1998, the trial court sentenced Appellant as a career offender to a term of fifteen years imprisonment. Appellant challenges both his conviction and his sentence, raising the following issues:
1) whether the evidence was sufficient to support his conviction;
2) whether the State established a proper chain of custody for the cocaine that was introduced into evidence; and
3) whether the Appellant was properly sentenced as a career offender.
After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Kim Hickerson.

Paul G. Summers, Attorney General & Reporter; Gill Robert Geldreich, Assistant Attorney General; Mickey Layne, District Attorney General; and Stephen E. Weitzman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Detective Nick Watson of the Lavergne Police Department testified that on October 25, 1996, he was working undercover in Coffee County, posing as a drug buyer. At about 10:00 p.m., he and a confidential informant were parked outside the Golden Bird nightclub in Tullahoma. The Appellant, whom Detective Watson had noticed standing outside the club with a woman and another man, approached the undercover vehicle. The informant introduced the Appellant to Detective Watson, and the Appellant asked, "What do you need?" The Detective responded that he needed a "fifty." The Appellant replied, "Okay" and returned to the two people with whom he had been

standing. Detective Watson then witnessed the other male in the group, Vondel Hickerson, hand something to the female, Tosha Burnett. Burnett approached the driver's side of the vehicle, where Detective Watson was sitting, and asked him for the money. Detective Watson handed her fifty dollars, and she gave him two off-white rock substances. Watson testified that Burnett then walked back to the Appellant and handed him the fifty dollars.

Tosha Burnett testified that Vondel Hickerson first handed the cocaine to Appellant, who then handed it to her and asked her to take it to Watson's car. After exchanging the cocaine for fifty dollars from Watson, she gave the money to Appellant.

After the drug sale was completed, Watson and the informant left the parking lot of the club and drove to a secure location. When they arrived, Watson placed the rocks, which he had stored in the console of his car, in a plastic bag that he marked as evidence and sealed with tape. Watson then drove to meet Officer Brent Perry of the Tullahoma Police Department. Watson gave Perry the bag containing the two rocks. Officer Perry testified that when he received the evidence from Watson, he placed the bag containing the rocks into a larger evidence bag, sealed the evidence bag, and wrote the date, time, names of the suspects, and other information on the bag. Perry then took the evidence to the Police Department and locked them in his personal filing cabinet in his office. The next day, Perry took the evidence out of his filing cabinet and gave it to his captain, Mike Hutchins. Officer Perry testified that he personally observed Hutchins place the evidence bag containing the rocks in a locked filing cabinet, where it remained until November 13, 1996. On that date, Perry went to Hutchins's office and checked the evidence bag out. He then personally took the evidence to the Tennessee Bureau of Investigation Crime Laboratory in Chattanooga for testing. When Perry retrieved the evidence from the TBI, he checked it into the evidence vault at the police station, where it remained until the time of the trial.

Selena Darter, a forensic chemist with the TBI Crime Laboratory in Chattanooga, testified that the rocks in the evidence bag given to the TBI by Officer Perry tested positive for cocaine with a weight of .29 grams.

At the sentencing hearing on January 23, 1998, Laura Prosser, a probation officer with the Department of Correction, testified that she prepared a presentence report in Appellant's case. Appellant stipulated that the prior convictions listed in the report were true and accurate. Prosser testified that Appellant had six prior cocaine sale convictions in Coffee County and all six occurred on different dates more than twenty-four hours apart. She also testified that Appellant had four prior felony convictions for selling cocaine in Kentucky. At the time of the instant offense, Appellant was on parole for his Kentucky convictions and on probation for his Coffee County convictions. At the conclusion of the sentencing hearing, the trial court found Appellant to be a career offender.

<u>Sufficiency of Evidence</u>

First, Appellant contends that the evidence was insufficient to support his conviction for selling cocaine. Specifically, he alleges that the evidence is insufficient because the proof established that it was Tosha Burnett, not the Appellant, who delivered the cocaine to Detective Watson. Furthermore, the Appellant argues that the evidence is insufficient because there was a contradiction in the testimony of Burnett and Watson as to whether Vondel Hickerson handed the cocaine directly to Burnett or whether he first handed it to Appellant, who then handed or gave it to Burnett for delivery to Watson.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the " State's witnesses and resolves all conflicts in the testimony in favor of the State. <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. <u>Id</u>. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); <u>Harris</u>, 839 S.W.2d at 75.

In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." <u>Tuggle</u>, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. <u>State v. Tilson</u>, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); <u>State v. Mattews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." <u>Matthews</u>, 805 S.W.2d at 779.

In this case, Appellant was convicted of selling cocaine. In order to prove that this offense occurred, the State was required to prove that Appellant knowingly gave cocaine to Detective Watson in exchange for money. <u>See</u> Tenn. Code Ann. § 39-17-417(a)(3). Appellant concedes that he approached Watson's vehicle, asked Watson what he needed, and, when Watson replied "a fifty," went back to Vondel Hickerson to obtain the drugs. It is also undisputed that, after Tosha Burnett gave the drugs to Watson in exchange for fifty dollars, she gave the money to Appellant. However, Appellant contends that because he did not deliver the cocaine to Watson and because there is a dispute regarding whether Vondel Hickerson handed the cocaine to Appellant, the evidence is insufficient to convict him of selling cocaine. We disagree.

While there is a contradiction in the testimony regarding whether Vondel Hickerson gave the cocaine to Appellant, we note that all questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. <u>See</u> <u>State v. Morris</u>, 24 S.W.3d 788, 795 (Tenn. 2000); <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). However, in this case, it is unnecessary to resolve the dispute of who

gave the cocaine to Burnett. It is undisputed that Appellant agreed to sell cocaine to Watson. It is also undisputed that Appellant then returned to the area where Vondel Hickerson was standing. Finally, it is undisputed that after she delivered the cocaine to Watson in exchange for fifty dollars, she gave the money to Appellant. Viewed in the light most favorable to the State, the evidence is sufficient for a reasonable juror to find Appellant guilty beyond a reasonable doubt of selling cocaine. This issue is meritless.

## Chain of Custody

Next, Appellant contends that the State did not establish a proper chain of custody for the cocaine that was introduced into evidence. Specifically, Appellant claims that a proper chain of custody was not established because the proof shows that the cocaine was placed in a cabinet in Captain Mike Hutchins's office, but Captain Hutchins did not testify. Furthermore, Appellant argues that a proper chain of custody was not established because several people had access to the evidence vault at the Police Department where the cocaine was placed after it had been analyzed by the Tennessee Bureau of Investigations. We disagree.

Before tangible evidence may be introduced, the party offering the evidence must either call a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holloman, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992). However, "the identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded." Id. Also, the failure to call all of the witnesses who handled the evidence does not necessarily preclude its admission into evidence. See State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). Rather, "it is sufficient if the facts establish a reasonable assurance of the identity of the evidence." State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990). "Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion." Holloman, 835 S.W.2d at 46.

Appellant challenges the chain of custody at two points. First, he challenges the point at which Captain Mike Hutchins had the cocaine in his filing cabinet because Hutchins did not testify. However, Officer Perry testified that he gave the cocaine to Hutchins and personally observed Hutchins place the evidence in the filing cabinet in his office. Perry testified that days later, when he retrieved the bag from the cabinet in Hutchins's office, it was in the same condition as when he witnessed Hutchins put it there. Although Hutchins did not testify at trial, his link in the chain was sufficiently established by the testimony of Officer Perry. Second, Appellant challenges the point where the cocaine was locked in an evidence vault at the Police Department because several people have access to that vault. However, there was no evidence on the bag of tampering, and Officer Perry testified that it was in the same condition as when he put it in the vault. Therefore, the trial court did not abuse its discretion in ruling that the identity and integrity of the evidence had been sufficiently established. This issue is without merit.

<u>Sentencing</u>

Finally, the Appellant argues that he was improperly sentenced as a career offender. With respect to class C felonies, a defendant may be sentenced as a career offender if he has "any combination of six (6) or more class A, B, or C prior felony convictions." Tenn. Code Ann. § 40-35-108(a)(1). However, "[c]onvictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions." <u>Id.</u> § 108(b)(4). Appellant asserts that because on April 30, 1993 he received six felony convictions for selling cocaine, the convictions should not be aggregated so as to classify him as a career offender. However, the presentence report reflects that each of the six convictions is based on conduct that occurred on separate dates, each more than twenty-four hours apart. Therefore, the trial court properly considered each of the six convictions dated April 30, 1993 as a separate conviction and properly sentenced Appellant as a career offender. This issue is without merit.

Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE